## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISON

**RAFAEL RETTING** and
**SAMANTHA RETTING**,
individually,

        Plaintiffs,

**v.**

**NEWELL BRANDS, INC.**,
a foreign profit corporation,

        Defendant.

_____

**JURY TRIAL DEMANDED**

**CASE NO.:** _____

## COMPLAINT FOR MONEY DAMAGES

Plaintiffs, **RAFAEL RETTING** and **SAMANTHA RETTING**, through counsel, hereby sue Defendant, **NEWELL BRANDS, INC**, and allege as follows:

## PARTIES

1.    Plaintiff, **RAFAEL RETTING**, is an adult citizen of North Carolina.

2.    Plaintiff, **SAMANTHA RETTING**, is an adult citizen of New York.

3.    Defendant, **NEWELL BRANDS, INC**., is a Delaware corporation registered with Georgia as a foreign profit corporation (Control No. 0316830) since 2003. Newell Brands, Inc.'s principal place of business is located at 6655 Peachtree Dunwoody Road, Atlanta, Fulton County, Georgia.

*Complaint*

## <u>JURISDICTION</u>

4.      This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because the Rettigs and Newell Brands, Inc. are citizens of different states and the amount in controversy exceeds $75,000.00.

5.      Venue is proper under 28 U.S.C. § 1331(c)(2) because Newell Brands, Inc. is licensed to do, and is doing, business within this district, and because the product at issue was designed, manufactured, marketed, sold, and/or distributed from within this district.

6.      This Court has personal jurisdiction over Newell Brands, Inc. because it regularly does and/or solicits business in Georgia (specifically, Atlanta, GA); engages in a persistent course of conduct and/or or derives substantial revenue from goods used, consumed, and/or services rendered from Georgia. Additionally, Newell Brands, Inc. transacted, solicited, and/or conducted business in Georgia from its headquarters of Atlanta, GA, which is in this district, and derived substantial revenue from such business.

## <u>GENERAL ALLEGATIONS</u>

*Company Overview*

7.      Newell Brands, Inc. is a consumer products company with a portfolio of more than 80 brands organized into three operating segments: learning & development, home & commercial, and outdoor & recreation.

*Complaint*

8.     Newell Brands, Inc.'s portfolio includes Coleman®, Oster®, Rubbermaid®, Yankee Candle®, Mr. Coffee®, Sharpie®, and Contigo®.

9.     For the 12-month period preceding September 30, 2023, Newell Brands, Inc. generated $8.3 Billion in net sales.

10.    As a consumer products company, design and innovation are fundamental to everything Newell Brands, Inc. does.

### The Contigo® Brand

11.    Contigo® is a brand within Newell Brands, Inc.'s outdoor & recreation operational segment, which aims to maximize consumers' enjoyment of the outdoors and promote an active daily life.

12.    Contigo® products are mostly cups and mugs designed to hold liquid.

13.    Newell Brands, Inc. admits that if a Contigo® product "leaks or drips or can't hold up to a hike or toddle, it's not good enough."[1]

14.    "The Contigo® Difference" is supposed to permit "[w]ater that's sipped, not spilled…[a]nd mugs that will last, not leak."[2]

### The Byron 2.0 Stainless Steel Travel Mug with SnapSeal™ Lid and Grip

15.    The Bryon 2.0 Stainless Steel Travel Mug with SnapSeal™ Lid and Grip comes in various sizes, including a 24-ounce capacity ("Byron 2.0").

---

[1] https://www.newellbrands.com/our-brands/contigo
[2] https://www.gocontigo.com/our-story.html

*Complaint*

16.    "The SnapSeal Insulated Stainless Steel Travel Mug with Grip, 24 oz., keeps drinks hot up to 9 hours or cold up to 21 thanks to THERMALOCK double-wall vacuum insulation. The one-piece SNAPSEAL lid allows for one-handed drinking with no lids or caps to remove or misplace and is [supposed to be] leak-proof when closed. Plus, a subtly textured grip offers a secure hold.[3]

17.    The Byron 2.0's features are publicly promoted as

**Features**

- SEAL IT IN: Leak-proof lid (when closed) for on-the-go convenience
- FOR THE LONG HAUL: THERMALOCK double-wall stainless steel insulation keeps drinks hot up to 9 hours or cold up to 21
- LEND A HAND: One-handed drinking with no lids or caps to remove or misplace
- GET A GRIP: Subtly textured grip with updated fluid movement for a secure hold on the go
- PERFECT FIT: Fits most car cup holders
- EASY CLEANUP: Top rack dishwasher-safe lid, handwash body
- PEACE OF MIND: Limited lifetime guarantee
- CAPACITY: 24 ounces

Id. at fn.3.

18.    The Byron 2.0 looks like this:



---

[3] https://www.gocontigo.com/explore-products/mugs/byron-2.0-stainless-steel-travel-mug-with-snapseal-lid-and-grip-24-oz/SAP_2169117.html

19.    Newell Brands, Inc. publicly promotes that the SnapSeal™ Lid on the Byron 2.0 is "leak-proof."



Id. at fn.3.

**Newell Brands, Inc.'s Patent Portfolio**

20.    Newell Brands, Inc. has "a rich portfolio of patents on [its] products," including its beverage brands like Contigo®.[4]

21.    Newell Brands, Inc. has more than 100 U.S. Patents related to Contigo® listed on its website. Although some are "used under licensed" (denoted by use of an asterisk*), none of the 4 patents regarding the Byron 2.0 (9,521,918; 10,064,506; 10,336,513; and, D732,337) are denoted used under license.[5]

---

[4]    https://www.newellbrands.com/patents

[5]    https://www.newellbrands.com/dA/945f1b97a1/asset/Beverage_patents_dec22.pdf

*Complaint*

22.    U.S. Patent 9,521,918 B2 (Sealing Mechanism for Beverage Container) issued December 20, 2016.

   a.    This is a lid technology to be used with beverage containers.

   b.    There is supposed to be a drink aperture, vent aperture, and actuator within the lid.

   c.    The actuator is used to open and close the drink aperture. It's positionable in either an open or closed position. When closed, "the liquid cannot pass through the drink aperture because the drink aperture is sealed."

   d.    The lid assembly is supposed to have a lock to secure the actuator in the closed position.

   e.    The vent aperture is generally open when both the actuator and drink aperture are open, but generally closed when they are closed. It assists in providing a vent for the liquid retaining cavity of the container body.

23.    U.S. Patent 10,064,506 B2 (Sealing Mechanism for Beverage Container) issued September 4, 2018.

   a.    The patent is also for an openable and closeable lid assembly provided for a beverage container, and comprises a lid housing, an actuator, and a seal.

   b.    In the open position, liquid can pass from the liquid retaining cavity in the container body and through the drink aperture for drinking by the user, but when

_____

?language_id=1

*Complaint*

closed the liquid cannot pass through the drink aperture because it's sealed.

      c.  The vent aperture is generally open when both the actuator and drink aperture are open, but generally closed when they are closed. The vent aperture assists in providing a vent for the liquid retaining cavity of the container body.

24.    U.S. Patent 10,336,513 B2 (Lid Having a Pre-Venting Lid Lever and a Seal Arm Assembly) issued July 2, 2019.

      a.    The patent is also for a lid intended to be used with liquid-holding beverage containers. The lid includes a lid lever and a seal arm assembly that stage the opening of a vent hole relative to a drink hold so that vapor within the liquid container may be vented to the atmosphere before the drink hole is opened.

      b.

When a hot fluid is placed into the container and the locking mechanism is closed, vapor pressure can build up within the container. When the container is opened, this vapor build up can forcefully exit the drink hole due to the internal-external pressure differential. As a result, a consumer can be inconvenienced or even injured by the exiting hot vapor. To solve this problem, some containers include vent holes to equalize the vapor pressure. However, current containers have vent holes that are always open, which can cause spillage out of the vent hole, or vent holes that are opened simultaneously with the drink hole when the lock is released, which may allow the vapor pressure to vent out of both the vent hole and the drink hole at the same time, again potentially putting the consumer at risk of injury.

c.

Generally, the lid lever stages opening of a vent hole relative to a drink hole so that vapor within the container may be vented to the atmosphere before the drink hole is opened. Thus, the lid lever and the seal arm assembly advantageously reduce or eliminate the possibility of a consumer being sprayed with hot vapor through the drink hole when the drink hole is opened, which could inconvenience, and potentially even injure, the consumer. The seal arm assembly is operatively connected to the cap of the lid so that the seal arm assembly is actuated by pivoting of the lid lever. However, the lid lever is configured to rotate a small amount (typically, about 5° or less) independently of the seal arm assembly to open a vent hole before contacting the seal arm assembly to open the drink hole. Operation of the lid lever and the seal arm assembly will be discussed in more detail below.

25.   U.S. Design Patent D732,337 S (Lid for Beverage Container) issued June 23, 2015.

   a.   It is a claim for an ornamental design for a lid for beverage containers.

26.   Although Ignite USA, LLC, is the applicant for all 4 Contigo® U.S. patents, in or around July 2014, it began to sell the Contigo® brand and associated intellectual property to Newell Brands, Inc. for approximately $308 million.[6]

---

[6]   https://www.prnewswire.com/news-releases/chicago-based-ignite-usa-llc-to-

27.    That sale was completed in or around September 2014.[7]

28.    At all times material, relative to the Contigo® brand and all issues material to this lawsuit, Ignite USA, LLC was a wholly owned subsidiary of Newell Brands, Inc.

***Prior Mug Explosions & Leaks***

29.    As noted in its patents, by design Newell Brands, Inc. knew or should have known that consumers of its SnapSeal™ lid technology on Byron 2.0 travel mugs could cause hot vapors to expel from the container and injure consumers.

30.    Before the underlying incident involving the Rettigs, Newell Brands, Inc. knew or should have known that its travel mugs expel hot vapor and/or liquid when a consumer would not expect and/or want it.

    a. For instance, via posts on Reddit, an online forum.[8]

31.    Before the underlying incident involving the Rettigs, Newell Brands, Inc. knew or should have known that its Bryon 2.0 travel mugs with SnapSeal™ lid technology malfunctioned, did not work as intended, and leaked.

    a.  For instance, based on customer reviews on its own website.[9]

---

be-acquired-by-newell-rubbermaid-268156482.html

[7]    https://ir.newellbrands.com/news-releases/news-release-details/newell-rubbermaid-announces-completion-ignite-holdings

[8]    https://www.reddit.com/r/gifs/comments/5kyy7j/contigo_mug_explosion/

[9]  https://www.gocontigo.com/explore-products/mugs/byron-2.0-stainless-steel-

*Complaint*

***Distributing & Selling Byron 2.0 Travel Mugs***

32.    Currently, on the official Contigo® website for Byron 2.0 travel mugs, it says "No Sellers Found." <u>Id.</u> at fn.9.

33.    Newell Brands, Inc. has an official Contigo® store on Amazon.com (and other online and retail brick-and-mortar stores) where it sells, markets, promotes, and/or advertises the Byron 2.0.[10]

34.    Through Amazon.com, buyers-consumers can place orders with sellers and/or order fulfillers (such as GRS Products, LLC a/k/a GRS-Products) to purchase and receive Byron 2.0 (24 oz.) travel mugs.

***The Rettigs Purchase a Byron 2.0 Travel Mug***

35.    On or about November 10, 2022, Linda Rettig (Rafael's wife and Samantha's mother) purchased a Newell Brands, Inc., Contigo® Byron 2.0 (24 oz.) travel mug on Amazon.com (Order # 111-5161989-6234641) ("The Travel Mug"). The order was fulfilled by GRS Products for ~$33 and its condition was new.

36.    The order shipped on or about November 21, 2022, and The Travel Mug was received by Linda Rettig at their home in Asheville, NC thereafter.

37.    At all times material, Newell Brands, Inc. placed The Travel Mug into

---

travel-mug-with-snapseal-lid-and-grip-24-oz/SAP_2169117.html

[10]  <u>See, e.g.,</u> https://www.amazon.com/Contigo-Byron-2-0-24OZ-Licorice/dp/B092MXGMZX/ref=sr_1_3?crid=1Y55QKUKIPUG4&keywords=contigo+byron+2.0+24oz&qid=1706277983&sprefix=byron+2.0+24o%2Caps%2C99&sr=8-3

the stream of interstate commerce.

38.    At all times material, The Travel Mug is directly traceable to Newell Brands, Inc.'s efforts to engage in the selling and/or introduction of travel mugs, including The Travel Mug, into the stream of commerce.

39.    At all times material, the Byron 2.0 travel mug with SnapSeal™ lid was intended for human handling and to store hot liquids such as coffee.

40.    After Linda Rettig received The Travel Mug, she gave it to Rafael Rettig who used it periodically to hold and drink beverages, including coffee.

41.    There was no visible written or graphic warning anywhere on The Travel Mug about vapor, vapor pressure, expulsion of vapor, the risk that hot contents may discharge or be expelled, or instructions on how or when to open the lid, and/or release pressure away from human beings.

42.    The bottom of The Travel Mug had a sticker with a barcode and reference to the official Contigo® website, as depicted below:



43.     In July 2023, Linda, Rafael, and Samantha Rettig were on vacation in Italy.

44.     On or about July 11, 2023, Rafael and Linda were in the process of returning home to North Carolina, but Samantha had an extended stay.

45.     While packing up and preparing to leave the housing unit they rented, Rafael Retting made coffee and poured it inside The Travel Mug and left it on the counter.

46.     After a period of time, Rafael put The Travel Mug into a designated area on the outside of his backpack, substantially similar to how it's depicted here:



47.    Before Linda and Rafael left, Samantha asked them for one more goodbye. Rafael, who was wearing the backpack, gave Samantha a hug.

48.    During that hug, hot liquid and/or vapor expelled from The Travel Mug, causing serious burn injuries to both of them—including but not limited to Rafael's right back, shoulder, and arm, and Samantha's left arm, hand, and to her face.

49.    Rafael and Samantha both promptly tried to mitigate their damages, first by applying cool water within the rental property, and then seeking medical treatment while in Italy.

50.    The medical providers in Italy tried to help Rafael and Samantha (see photos below) but, given the severity of the burn injuries, urged both to return to the United States for treatment.



51.    Linda, Rafael, and Samantha promptly returned to the United States, going first to New York, where Samantha resided.

*Complaint*

52.     After a period of time, Rafael and Linda returned home to North Carolina.

## Count I – Strict Liability

53.     Plaintiffs re-allege and incorporate paragraphs 1-52.

54.     At all times material, Newell Brands, Inc. was responsible for and/or oversaw the design of Contigo® Bryon 2.0 travel mugs with SnapSeal™ lids, including The Travel Mug.

55.     At all times material, Newell Brands, Inc. was responsible for and/or oversaw the manufacturing of Contigo® Bryon 2.0 travel mugs with SnapSeal™ lids, including The Travel Mug.

56.     At all times material, Newell Brands, Inc. was responsible for and/or oversaw the testing of Contigo® Bryon 2.0 travel mugs with SnapSeal™ lids, including The Travel Mug.

57.     At all times material, Newell Brands, Inc. was responsible for and/or oversaw that Contigo® Bryon 2.0 travel mugs with SnapSeal™ lids, including The Travel Mug, utilized the intellectual property such as the 4 U.S. Contigo® patents.

58.     At all times material, Newell Brands, Inc. was responsible for and/or oversaw the marketing, promotion, and/or advertising of Contigo® Bryon 2.0 travel mugs with SnapSeal™ lids, including The Travel Mug.

59.    At all times material, Newell Brands, Inc. was responsible for and/or oversaw the packaging of Contigo® Bryon 2.0 travel mugs with SnapSeal™ lids, including The Travel Mug.

60.    At all times material, Newell Brands, Inc. was responsible for and/or oversaw the introduction of of Contigo® Bryon 2.0 travel mugs with SnapSeal™ lids, including The Travel Mug, into the stream of commerce.

61.    At all times material, Newell Brands, Inc. was responsible for and/or oversaw the distribution of Contigo® Bryon 2.0 travel mugs with SnapSeal™ lids, including The Travel Mug, into and/or throughout the stream of commerce.

62.    At all times material, Newell Brands, Inc. intended for Contigo® Bryon 2.0 travel mugs with SnapSeal™ lids, including The Travel Mug, to be sold to consumers, like the Rettigs, throughout the United States.

63.    At all times material, Newell Brands, Inc. intended for, or knew and/or should have known that consumers, like Rafael Rettig, would put hot beverages like coffee in Contigo® Bryon 2.0 travel mugs with SnapSeal™ lids, including The Travel Mug.

64.    At all times material, Newell Brands, Inc. intended for, or knew and/or should have known that consumers, like Rafael Rettig, would put Contigo® Bryon 2.0 travel mugs with SnapSeal™ lids, including The Travel Mug, in a backpack pocket or other area designated for holding a beverage container.

*Complaint*

65.     At all times material, Newell Brands, Inc. used various distributors and partners, including Amazon.com, to market, promote, and sell Bryon 2.0 travel mugs with SnapSeal™ lids, including The Travel Mug, to the public throughout the United States to generate profit.

66.     At all times material, the manner in which Rafael Rettig used and handled The Travel Mug in a reasonable and ordinary manner, and/or as intended and/or in a reasonably foreseeable way.

67.     At all times material, The Travel Mug was defectively designed and/or manufactured such that, at the time it was placed in the stream of commerce, it had a lid assembly which allowed vapor pressure to build up within the container that could forcibly exit and/or expel hot vapor pressure and/or hot contents of the container, thereby injuring consumers like the Rettigs.

68.     At all times material, Newell Brands, Inc. was a manufacturer of personal property (to wit: The Travel Mug) sold as new to a natural person.

69.     At all times material, The Travel Mug was defective in design and/or manufacturing in that, when it left Newell Brands, Inc.'s control, the foreseeable risks exceeded the utility and/or benefits associated with its design and/or formulation.

70.     At all times material, The Travel Mug supplied by Newell Brands, Inc. was defective in design and/or manufacturing in that it was more dangerous than an

ordinary consumer would expect when used in its intended or reasonably foreseeable manner, particularly when a consumer used the product to consume a hot liquid substance.

71.     At all times material, The Travel Mug was defective and unreasonably dangerous insofar as marketing, packaging, and/or labeling when it left Newell Brands, Inc.'s control because it did not have any warning much less one sufficient enough to alert consumers, including Plaintiffs, of the dangers associated with using it with hot beverages like coffee, notwithstanding Newell Brands, Inc.'s actual and/or constructive knowledge of such risks and reactions.

72.     At all times material, Newell Brands, Inc. knew or should have known that The Travel Mug was a dangerously defective product that posed an unacceptable risk unknown to and by the consuming public, including Plaintiffs.

73.     At all times material, the defective condition of The Travel Mug when sold is the proximate cause of Rafael Rettig's injuries and resulting damages.

74.     At all times material, the defective condition of The Travel Mug when sold is the proximate cause of Samantha Rettig's injuries and resulting damages.

75.     At all times material, Newell Brands, Inc. owed Rafael and Samantha Rettig a duty as a manufacturer. O.C.G.A. § 51-1-11(b)(1).

76.     At all times material, The Travel Mug was not merchantable and reasonably suited to its intended uses and was therefore defective.

77.   Defendant is strictly liable for Plaintiffs' injuries and damages.

78.   As a direct, foreseeable, and proximate result, Rafael Rettig:

    a.   was seriously injured;

    b.   has incurred medical expenses for reasonable and related medical treatments in the past and will continue to incur medical expenses into the future for reasonable and related medical treatments;

    c.   has sustained bodily injuries, physical impairment, disfigurement, experienced pain, suffering, mental anguish, and emotional distress;

    d.   has been and will continue to be inconvenienced;

    e.   has suffered and continues to suffer a loss of consortium relative to his relationship with Linda Retting, his wife of more than 30 years, which relationship has been interfered and/or impaired by, for example, diminishment or loss of companionship and affection;

    f.   has had his ability to enjoy life diminished, which will continue into the future; and,

    g.   has lost wages and/or earnings in the past, and/or his ability to earn wages and/or earnings in the future has been diminished.

79.   As a direct, foreseeable, and proximate result, Samantha Rettig:

    a.   was seriously injured;

    b.   has incurred medical expenses for reasonable and related medical

*Complaint*

treatments in the past and will continue to incur medical expenses into the future for reasonable and related medical treatments;

c.  has sustained bodily injuries, physical impairment, disfigurement, experienced pain, suffering, mental anguish, and emotional distress;

d.  has been and will continue to be inconvenienced;

e.  has had her ability to enjoy life diminished, which will continue into the future; and,

f.  has lost wages and/or earnings in the past, and/or her ability to earn wages and/or earnings in the future has been diminished.

80.    Newell Brands, Inc.'s conduct also evidences willful misconduct, malice, fraud, wantonness, oppression, and/or an entire want of care which would raise the presumption of conscious indifference to the consequences of its actions and/or inactions. This entitles Plaintiffs to an award of punitive damages under Georgia law, which they are also seeking. O.C.G.A. §51-12-5.1.

WHEREFORE, Plaintiffs, RAFAEL and SAMANTHA RETTIG, hereby demand judgment for money damages against Defendant, NEWELL BRANDS, INC., for all consequential (economic and non-economic) and punitive damages allowable by law, and further demands a trial by jury on all issues so triable.

## Count II - Negligence

81.    Plaintiffs re-allege and incorporate paragraphs 1-64, 66-72, and 76.

*Complaint*

82.   At all times material, Newell Brands, Inc. owed a duty to exercise reasonable care to consumers, including Plaintiffs, in:

a.  designing of The Travel Mug;

b.  developing The Travel Mug;

c.  manufacturing of The Travel Mug;

d.  testing The Travel Mug;

e.  inspecting The Travel Mug;

f.  packaging The Travel Mug;

g.  promoting The Travel Mug;

h.  marketing The Travel Mug;

i.  distributing The Travel Mug;

j.  labeling The Travel Mug;

k.  selling The Travel Mug;

l.  selecting from among alternative product designs to reduce the reasonably foreseeable risks of harm presented by The Travel Mug;

m. adequately warning consumers;

n.  placing adequate written and/or graphic warnings on one or more portions of The Travel Mug regarding the dangers associated with it insofar as the forcible exit and/or expelling of hot vapor pressure and/or hot contents of the container, thereby injuring consumers like the

Rettigs, which are risks that Newell Brands, Inc. knew or should have known; and/or

o.  effectuating a timely recall its defective Byron 2.0 travel mugs with SnapSeal™ lids.

83.     At all times material, Newell Brands, Inc. breached the aforementioned duties by not using reasonable care in attempting to fulfil the duties listed in Paragraph 81 and/or taking no action and/or making no effort at all to fulfil them.

84.     As a direct, foreseeable, and proximate result of Newell Brands, Inc.'s negligence, Rafael Rettig:

a.  was seriously injured;

b.  has incurred medical expenses for reasonable and related medical treatments in the past and will continue to incur medical expenses into the future for reasonable and related medical treatments;

c.  has sustained bodily injuries, physical impairment, disfigurement, experienced pain, suffering, mental anguish, and emotional distress;

d.  has been and will continue to be inconvenienced;

e.  has suffered and continues to suffer a loss of consortium relative to his relationship with Linda Retting, his wife of more than 30 years, which relationship has been interfered and/or impaired by, for example, diminishment or loss of companionship and affection;

f.  has had his ability to enjoy life diminished, which will continue into the future; and,

g.  has lost wages and/or earnings in the past, and/or his ability to earn wages and/or earnings in the future has been diminished.

85.  As a direct, foreseeable, and proximate result of Newell Brands, Inc.'s negligence, Samantha Rettig:

a.  was seriously injured;

b.  has incurred medical expenses for reasonable and related medical treatments in the past and will continue to incur medical expenses into the future for reasonable and related medical treatments;

c.  has sustained bodily injuries, physical impairment, disfigurement, experienced pain, suffering, mental anguish, and emotional distress;

d.  has been and will continue to be inconvenienced;

e.  has had her ability to enjoy life diminished, which will continue into the future; and,

f.  has lost wages and/or earnings in the past, and/or her ability to earn wages and/or earnings in the future has been diminished.

86.  Newell Brands, Inc.'s conduct also evidences willful misconduct, malice, fraud, wantonness, oppression, and/or an entire want of care which would raise the presumption of conscious indifference to the consequences of its actions

*Complaint*

and/or inactions. This entitles Plaintiffs to an award of punitive damages under Georgia law, which they are also seeking. O.C.G.A. §51-12-5.1.

WHEREFORE, Plaintiffs, RAFAEL and SAMANTHA RETTIG, hereby demand judgment for money damages against Defendant, NEWELL BRANDS, INC., for all consequential (economic and non-economic) and punitive damages allowable by law, and further demands a trial by jury on all issues so triable.

### Count III – Breach of Implied Warranties

87.    Plaintiffs re-allege and incorporate paragraphs 1-64, 66-72, and 76.

88.    At all times material, Newell Brands, Inc. was a seller and merchant as contemplated by O.C.G.A. § 11-2-314.

89.    At all times material, Rafael and Samantha Rettig were third-party beneficiaries of Newell Brands, Inc.'s implied warranties under Georgia law in that they were in Linda Rettig's family or household or it was reasonable to expect that they may use or be affected by The Travel Mug. O.C.G.A. § 11-2-318.

90.    At all times material, The Travel Mug was a good to be merchantable under O.C.G.A. § 11-2-314.

91.    At all times material, there was an implied warranty of merchantability from Newell Brands, Inc. to the Rafael and Samantha Rettig regarding The Travel Mug as contemplated by O.C.G.A. § 11-2-314.

92.    At all times material, there was an implied warranty of fitness for

particular purpose from Newell Brands, Inc. to the Rafael and Samantha Rettig regarding The Travel Mug as contemplated by O.C.G.A. § 11-2-315.

93.    At all times material, Newell Brands, Inc., at the time of contracting, knew or had reason to know of the particular purpose of The Travel Mug being used to store, hold, contain, or drink hot beverages, including coffee, and/or to place it in bags, backpacks, and/or other areas designated for holding beverage containers while traveling and/or moving, and Linda Rettig, as buyer, and Rafael and Samantha Rettig, as third-party beneficiaries, relied on Newell Brands, Inc.'s skill or judgment to select or furnish suitable goods.

94.    At all times material, Newell Brands, Inc. breached the implied warranties of merchantability and/or fitness for a particular purpose owed to the Rettigs.

87.    As a direct, foreseeable, and proximate result, Rafael Rettig:

h.  was seriously injured;

i.  has incurred medical expenses for reasonable and related medical treatments in the past and will continue to incur medical expenses into the future for reasonable and related medical treatments;

j.  has sustained bodily injuries, physical impairment, disfigurement, experienced pain, suffering, mental anguish, and emotional distress;

k.  has been and will continue to be inconvenienced;

l.  has suffered and continues to suffer a loss of consortium relative to his relationship with Linda Retting, his wife of more than 30 years, which relationship has been interfered and/or impaired by, for example, diminishment or loss of companionship and affection;

m. has had his ability to enjoy life diminished, which will continue into the future; and,

n.  has lost wages and/or earnings in the past, and/or his ability to earn wages and/or earnings in the future has been diminished.

88.  As a direct, foreseeable, and proximate result, Samantha Rettig:

a.  was seriously injured;

b.  has incurred medical expenses for reasonable and related medical treatments in the past and will continue to incur medical expenses into the future for reasonable and related medical treatments;

c.  has sustained bodily injuries, physical impairment, disfigurement, experienced pain, suffering, mental anguish, and emotional distress;

d.  has been and will continue to be inconvenienced;

e.  has had her ability to enjoy life diminished, which will continue into the future; and,

f.  has lost wages and/or earnings in the past, and/or her ability to earn wages and/or earnings in the future has been diminished.

*Complaint*

89.    Newell Brands, Inc.'s conduct also evidences willful misconduct, malice, fraud, wantonness, oppression, and/or an entire want of care which would raise the presumption of conscious indifference to the consequences of its actions and/or inactions. This entitles Plaintiffs to an award of punitive damages under Georgia law, which they are also seeking. O.C.G.A. §51-12-5.1.

WHEREFORE, Plaintiffs, RAFAEL and SAMANTHA RETTIG, hereby demand judgment for money damages against Defendant, NEWELL BRANDS, INC., for all consequential (economic and non-economic) and punitive damages allowable by law, and further demands a trial by jury on all issues so triable.

## Demand for Trial by Jury

The Plaintiffs demand a trial by jury on all issues so triable.

Respectfully submitted on this 26th day of January, 2024.

/s/ Jordan Redavid
**JORDAN REDAVID, ESQ.**
Georgia Bar No. 628049
Jordan@YourChampions.com
Crystal@YourChampions.com
*Lead Counsel for Plaintiffs*

/s/ Kareem L. Todman
Kareem L. Todman, Esq.
Georgia Bar No. 833621
Kareem@YourChampions.com
Crystal@YourChampions.com
*Co-Counsel for Plaintiffs*

**FISCHER REDAVID PLLC**

*Complaint*

PO Box 530096
Atlanta, Georgia 30353
Phone:  (404)-287-2856
Fax:      (404)-594-8563
GAservice@YourChampions.com